Good morning. May it please the Court. I am Alan Harris for the petitioner. And we've already gone over his name. Thank you. This case is a case that deals with a judge who found that there was no exception to the one-year rule and then stood to see if the petitioner had a clear probability of harm if he was returned to his country. The problem with that is that the petitioner, in fact, had an exception to the one-year bar on his filing of political asylum. This petitioner had plenty of harm because of his persecution. His persecution and harm were that he was a Jew who was publishing anti-government brochures in the country of Russia. Because of this, his father was killed, strangled, in the publishing house. He was the petitioner himself, his son, was threatened by telephone calls, beaten at a Jewish theater, attacked at the publishing house, threatened by police. He was again attacked for the brochures. He was kidnapped by a car that was a police car. He was detained by five persons in a lot outside the city. They hung him from a tree, by the tree right from the neck. The same way they had been. We've read the briefs. We're familiar with the facts. But you've got me confused now. Are you still claiming entitlement to asylum? Absolutely. Yes, sir. All right. So you don't think that you're barred by the one-year statute? No, we do not. Can you point to me where in the record you raised this argument before the BIA with regard to the one-year limitation on the asylum claim? There is no place to point. Well, what do you do with 1158A3? That's the statute. Yes. I say that there's a ‑‑ he has a ‑‑ he was in status to just a month and a half before he applied for political asylum. But he has to do it within a year of his entry. Unless he has extraordinary circumstances. He had changed circumstances under the AC of R2. What happened during the year that hadn't already occurred when he entered? He was married to a United States citizen. He was filing for a green card. Okay. And if you're in status, you can't get referred to a court if an EOIR. You can abandon your asylum claim and seek admission as a resident, as married to a resident citizen of the United States, can you not? Yes, but ‑‑ Under a different statute. Of course. If you're already married, why don't you just go through the adjustment and why go through political asylum? Right. So he didn't have to do the political asylum, but then ‑‑ Why didn't he opt to go the other way if he thought that was the better course? The marriage was the better course under the way the immigration authority here gives out green cards and adjusts people to permanent residence. It is the better course. If you do political asylum, you could lose. If you're married to a United States citizen, it's just a matter of doing the paperwork and going through the procedures. Keeping the marriage together. And keeping the marriage together. Yes. And he ‑‑ and, unfortunately, this marriage didn't work out. What's unusual about that? It's happening all the time. Keeping the marriage together? No. Switching applications. Switching status. Abandon the ‑‑ abandon the petition for asylum and then seek a status change because of the marriage. Because he came here under a K visa. So the correct extension of that is to be married and apply for adjustment through ‑‑ Did he ever consummate the marriage? I had the impression from reading the brief that he was the equivalent of a mail order husband but that he arrived here and basically never consummated the marriage and immediately commenced divorce per se. With that wife, he lived before the marriage with her. And they had a consummation. And then they came here and had difficulties in this country. And that's when things got awry and broke down and resulted in a divorce two years later. Upon the divorce. It was actually less than two years later, wasn't it? No, in October 1998. So doesn't the INS regulation say that to be a legitimate marriage, it has to have existed for two years prior to entry and last at least two years? Yes, they do say that, yes, Your Honor. So for immigration purposes, this was a sham marriage, was it not? As the regulations define it? I would say that this marriage is a marriage that didn't work out. A sham I can't go with, but this marriage didn't work out and he couldn't go through the resident alien adjustment. So then he has changed circumstances under 208-484-II. I might agree with you if I thought there was a colorable claim to a legitimate marriage. But the problem I'm having is he didn't file his application within a year. The IJ basically made a finding that whatever the status of the marriage was, it didn't last. And you concede that you didn't raise the attack on the one-year asylum statute to the BIA. So I'm wondering whether we even have jurisdiction to consider the asylum claim. Shouldn't we just focus on whether or not he was entitled to withholding or removal? Well, that jurisdictional situation arises in that Hakim v. the INS 273, F3-812 from 2001 in this Court. And that case is about — that's the one that says there's the jurisdiction issue. And that case is about a Pakistani who was — had a criminal charge, and his only alternative was to do withholding. But this is a case where he — there's a choice between doing a political asylum and the withholding. And that's an important difference than Hakim, real important. This is a very important case in that regard. And it's important that this Court sees that if you're given the choice of doing political asylum withholding, you'd rather be doing political asylum. And then, if the case is appealed to the BIA, and the BIA says, well, the judge found you not credible on the withholding claim, but here we don't agree with his credibility finding in the BIA, but we're going to hold with the one-year. That's why we're here. That's like when you're — when you have a — you deny a grant. It's kind of an impart and impart, and they would remand on one side of it. But we're here only because of the one-year issue. This is alone the one-year issue here. And that's what I'm here to argue about why Hakim has to be distinguished. And we can't just follow it blindly and say, wait a minute, there's no jurisdiction here. This is the kind of case that you're looking for where the credibility is not an issue. The BIA said — the BIA made one sentence here that said, although we do not find that the record adequately supports the adverse credibility finding, we do find that there's a probative value because it's reduced by the vague nature of the testimony provided. So that's it.  We're here. Kennedy. Counsel, if you have — if you express a political — or maintain a particular political opinion that's hostile to the government, and you are threatened and you are harassed, does that mean that you have been persecuted? Yes, it certainly does. This — So threats and harassment are sufficient and the equivalent of persecution in your argument. If they're in the aggregate and the totality of the situation, that's enough. This case is not. So if there is no physical impairment, no deprivation of any kind of rights, other — it's just harassment and threats. That's sufficient. In the totality of it. Threats go on in our political scheme all the time around here. Well, thank God there's more in this case. Well, that's — They took — they hung this man. They took him to the jail. They beat him. They put him in with criminals. That's government — that's government action, sir. Okay. Do you want to save some time for rebuttal? My pleasure. Thank you very, very much, Mr. Sorensen. Good afternoon, Your Honor. My name is Dan McClain, on behalf of the Respondent. Mr. Samsonow's claim for asylum is outside this Court's jurisdiction for two reasons. One is he never raised it in his opening brief. So as a jurisprudential matter, this Court has held that unless you raise issues in your But perhaps the more overarching reason is that the statute, the INA, says very clearly that no court shall have jurisdiction to review determinations made under 1158A2. And that's the provision upon which the Board and the immigration judge both relied upon in finding that the asylum claim was not timely filed. So that's off the table. All that we have left is the withholding for removal claim. And that's, again, reviewed under the substantial evidence standard. The Board concluded that Mr. Samsonow did not establish his eligibility for withholding and removal. His testimony was very vague about what his father's manuscript was about. He never identified who his alleged persecutors were. He just referred to they without identifying who they were. And he left Russia several times during the period of 1994 and 1995 when he was allegedly being persecuted. Went to the Canary Islands, went to Poland, went to the Czech Republic, and returned. This all supports the Board's ruling that Mr. Samsonow did not satisfy his eligibility for did not satisfy the elements required to show that he's eligible for withholding and removal. What didn't he satisfy? He didn't meet his burden of persuasion in showing that there was a clear probability of persecution were he to return to Russia. The Board found that his testimony was vague and conclusory. Well, you know, persecution of the Jews in Russia has been going on for hundreds of years. Well, you know, I mean, my father came from Russia, came here because of persecution. That may be true, Your Honor. What do you mean, it may be true? Well, no, that is true, Your Honor. I'm saying it is true. It goes on now. It does. It may go on now. I can't say for sure. All you've got to do is read the papers and read the country report. Mr. Samsonow's claim is different, though. His claim is that he's being persecuted on behalf of his – because of his political opinion, because he's published anti-state materials. He's also claimed that he was harassed outside a Jewish theater by a group of youths. He didn't identify that the youths were affiliated with the government in any way, and it's unclear how that relates to the thrust of his claim. When the police took him to prison and they put him in a cell with others, what did the cops say to the others? They used anti-Semitic epithets. Yeah. Allegedly. Sort of thrown him to the wolves. There was one incident, Your Honor. It was unclear who took him to the police station. He was released. It was unclear whether he was charged, and it's certainly not clear that Mr. Samsonow would face a clear probability of persecution were he to return to his country. He left on a K visa. He didn't show to the immigration judge one brochure of the thousands that his father allegedly – or that he allegedly published of his father's writings. He didn't – Was he able to take them out? Presumably he was. He left voluntarily. He left on a K visa. In fact, he didn't even tell the consular officer that he was leaving because of persecution. His testimony was that he didn't say that because he didn't want to intellectually insult the consular officer. Well, I went there. You know, you have to go through to get on the airplane. I mean, if you've got a Bible, they take it away from you. They want to see everything you've got in there. I mean, they take all that stuff away. So a lot of the literature had to be smuggled out. There's no evidence. We respectfully suggest, Your Honor, that there's no evidence that that occurred in this case. When did he go through? What year? 1996. He arrived in the country in October 1996. So this is not – we're seven years removed from the Soviet state. Obviously, there may be some problems there, but there's no testimony from Mr. Samsonov that he was searched and brochures were removed or anything like that. Unless there are further – and finally, on the point, even if the court did have jurisdiction to review the timeliness of his asylum application, it's clear that when he came here in October 1996 by his own testimony, he never lived with his wife. It's clear he said that the marriage was falling apart then. There's certainly substantial evidence that then supports the Board's decision that he should have filed a one-year – an asylum application within the one year of his arrival. For those reasons, we respectfully request that the court deny the decision for review. Thank you. Okay. A little rebuttal? You know, you remind me a little bit of Woody Allen. Whatever good stuff you say is good, tell my wife. What? Whatever you say good, please tell my wife, too. No. I mean, I like Woody. This case is caught in time. If this case came to trial in EOIR today, it would be allowed the political asylum claim. There's something wrong in the procedures under 1208.4. It's wrong. It needs definition by this Court. Because that one-year bar doesn't apply today. I just had a case last week. A lady was – worked on her doctorate at UCLA, duration of stay for 10 years, came from Russia. Her parents came contemporaneously with the 10th year as refugees from Russia. And she said, now I'm out of status. We waited. Four days after, we filed for political asylum. And they said, fine. In the 11th year, they said there's no one-year bar. This needs definition by this Court. I am here about that one-year bar. I declare probability. If you listen to this case with the ear of withholding, it's a higher standard. This person's – this Petitioner still makes it, Your Honors. But if you listen to this case with political asylum in mind, with that ear, this is an easy case. And I'm asking that attention be paid to this one-year bar. Hakeem doesn't apply anymore to this case. He only had the chance for withholding. This is a person who has a chance for political asylum. And I'm pleased. I ask that you address that. Kennedy. Why did they let this other lady do it after 10 years? Because of all the direction that the Court has. The Court has – I asked. Yesterday, I sat with the judge last night. He said, tell them about the Federal Register, January 5th, 2000. In the notes, it says a reasonable – and Congress said a reasonable period after you're out of status is six months to file. You cannot file here when you're in status. It doesn't go to the courts. I have cases all the time. I say, what's the matter? I'm in status. Oh, wait a minute. We've got to wait until you go out of status to file. And if it's an F, boom, I don't care if it's four years, I'm in the fifth year. I just did it with the doctor who got a doctorate in piano. It doesn't work. Oh, the doctor in piano? She got a doctorate. She wasn't a doctor doctor. She was a doctor in piano. I mean, in UCLA, she got a doctorate in the – Oh, I thought you're talking about the PhD. Right, right. Exactly. I thought you were talking about the movie. No, no, no, no, no, no, no. But in the – it was a duration of stay visa. She stayed for 10 years. It's fine. There's no one-year bar. There is no one-year bar. Everybody is out of step. It's – so after I – after the judge says tell about the Federal Register, I go – I went to a DHS attorney yesterday afternoon, and I said, what is it that makes you let everybody just have no problem with the one-year bar? They said, ACFR-208-4A-4-II says that you have changed circumstances. That's not changed country conditions. That's changed circumstances to the person. This man has changed circumstances. So now I have the DHS telling me, forget the one-year bar. I have the judge telling me, forget the one-year bar. And then I say to – I said to my wife, what do they do in Anaheim? I said, they have an operating instruction. When you're in status, then the reasonable period starts to run. And there's a reasonable period under that section. And it can't – and this Court has to take all this and total it up and come out with some direction for everyone. Because I go to court every day. No, I don't care about the one-year rule now in 2004 at all. But this case is from 2000. So everybody's still talking on the cusp of when it was – it was just, oh, there's a one-year bar filed before April of 1997, where you have one year. But all the definitions since then has taken it away. I have had – and this is 2004. We've – in my office, we've done 75 merits hearings, and boom, there's no one-year bar. Who pays? I don't care. Are legal, medical, or you're in status. This man was in status until just a month and a half before he filed. Reasonable period. There has to be someone to address that. Thank you. I'm sorry to keep you late like this. No, that's all right. That's all right. I mean, I – You've got all this in your brief, haven't you? No. Well, once you just – you know, as far as I'm concerned, you can submit a supplemental letter and just put this out. I'll be more than happy to. I'm so happy that you – I'm so happy that you were kind enough to waive the oral argument in the next case. We used to – and since I'm at the end, just one second, please. In the next case, I didn't want to talk about it, but I say it. It's so late, I can't – I was also the attorney in the next case. So I didn't want you to think, you know, we didn't want to come here. Thank you. Thank you very much. I hope you grant it, and then you reverse and remand it with some kind of instruction about the one-year rule. Thank you. Send us a, you know, letter not to exceed, say, two or three pages. Okay. Within 10 days. I'll be here on Monday morning with Mr. Wagner. Thank you so much. I'll have you here on Monday morning. I'll give it to Mr. Wagner. Yeah, okay. Mr. Wagner. All right. Is that the proper way for you to immediately send it to San Francisco? No, he files it. Oh, okay. Come right over on Monday morning. He's got a fax machine. We have fax machines. Oh, I can do – I speak to Mr. Wagner. Thank you so much. We're very – we're very moderate. Thank you. Okay. My wife will give it to you by the end of the day. On the Internet, too, you know. I mean – Oh, I got you. I got you. I'm sorry I make all these references to my wife. I work for my wife. So, you know, so – You work for her? Yeah. Is she under the one-year rule? She's in the 25-year marriage. Delighted to hear that, Mr. Harold. Thank you. All right. Okay. So what about this? I mean, he tells us that as long as you're in status, the one-year rule doesn't apply.   I mean, you've got to be kidding me. I mean, you've got to be kidding me. I mean, you've got to be kidding me. I don't know anything – What the hell's going on? I don't know anything about that, Your Honor. I will say that there are two different standards here. One is there is an extraordinary circumstances – extraordinary circumstances exception to the one-year rule, which the Attorney General, the Board, and the IJ have in their discretion. They can waive the one-year rule if there are extraordinary circumstances that they feel apply. In this case, the determination was that extraordinary circumstances do not apply. Well, he hasn't told us about any extraordinary circumstances. You know, I mean – Well, I assume he's – He plays the piano at UCLA. He's a Ph.D. Right. And she's still in status. And, you know, ten years go by and she applies for it. Right. You know. Right. It's all done. Right. But, Your Honor, the second problem with that is can this Court review a determination, a discretionary determination, by the Board and the immigration judge that the extraordinary circumstances exception does or does not apply? And the statute is clear on that. And the statute says this Court doesn't have jurisdiction to do that. Well, you know, if there's been a great denial of due process, then maybe we can look at it. We've got absolute abuse of discretion. We've got a lot of ways of figuring things out. Okay? Okay. Yeah, but respond to that. I'm just curious. I don't know anything about his case by – No, no, no. But what he's going to send us on what goes on and what the rules are, he was rattling off a whole bunch of sections. Sure. The sections – my response is this, Your Honor, that there is an extraordinary circumstances exception. But he wasn't talking about that. I thought – He was saying the person's in status. Huh? Person's in status. Right. Ten years in status, then they apply. Okay. No problem. That may fall within the extraordinary – that seems like the situation that would fall within the extraordinary circumstances exception. You have a bona fide marriage that lasts for ten years. You don't want to be whipsawed, so it seems that the immigration judge or the board would say that that – Well, I thought he was just playing the piano at UCLA for ten years. I don't know. Perhaps I'll be better situated to respond to the letter when I see it. Yeah. I mean, you know, this is – This is a government of law and not of man. We've got to be consistent. Right? You're going to give him ten days to respond. Yeah. Ten days to respond. That's ample time, Your Honor. Thank you. Thank you. All right. Pleasure to have you here. And we'll tune in on your next show, Woody. All right. Thank you. Okay, we're through. We'll adjourn. All rise. Court is adjourned.
judges: Pregerson, Beezer, Tallman